IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Alan V. Washburn,          )
                           )
        Plaintiff,         )
                           )
                           )
        v,                 )   Civ. Action 03 0869 RJL
                           )
                           )
Michael Lavoie, Christian  )
Wood, Robert Bercik, and   )
Edmund Donnelly,           )
                           )
        Defendants.        )
_____)

PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO BIFURCATE

Plaintiff, Alan V. Washburn, opposes Defendants'
Motion to Bifurcate (served August 27, 2003).

Defendants' Motion proposes (1) to separate the
issue of "damages" from "liability" and (2) to stay
discovery on the issue of "damages." Defendants'
Motion is wholly without merit. Separating "liability"
from "damages" would run contrary to well-established
principles of federal civil procedure and would
infringe Plaintiff's rights to trial by jury. Fur-
ther, there are compelling reasons against a stay of
discovery on "damages."

**General Principles Regarding Bifurcation.** Defen-
dants' Motion is predicated on FRCivP 42(b) (see, e.g.,
Defendants' Memorandum of Points and Authorities, p. 2

[hereafter cited as "Defs.' Memorandum"]). Numerous
federal court decisions have made clear that there is a
presumption against bifurcation under that Rule. For
example, in *Kimberly-Clark Corp.* v. *James River Corp.*
*of Virginia*, 131 F.R.D. 607 (N.D. Ga. 1989), the Court
stated that a unitary trial is strongly favored:

> "In considering such a course [bifur-
> cation], the court should remain mind-
> ful of the traditional rule of the
> factfinder; i.e., to make an ultimate
> determination on the basis of a case
> presented in its entirety. Because bifur-
> cation works an infringement on such an
> important aspect of the judicial pro-
> cess, courts are 'cautioned that [it]
> is not the usual course that should be
> followed.' .... [citing cases] *See also*
> Fed.R.Civ.P. 42(b) Advisory Committee Notes
> (bifurcation should not be routinely
> ordered)." 131 F.R.D. 607, at 608.

Another court stated the presumption against piecemeal
trials this way: "Bifurcation, however, is a procedural
devise to be employed only in exceptional circumstances
[citing authority]." *Marisol A. by Next Friend Forbes*
v. *Giulani*, 929 F.Supp. 662, 693 (S.D.N.Y. 1996).
Another such case is *Monaghan* v. *SZS* 33 Associates,
L.P., 827 F.Supp. 233 (S.D.N.Y. 1993).

Bifurcation may also infringe a party's Seventh
Amendment right to "have a single issue decided one
time by a single jury." *Greenhaw* v. *Lubbock County*
*Beverage Association,* 721 F.2d 1019, 1025 (5th Cir.,

3

1984), citing *Gasoline Products Co.* v. *Champlin*

*Refining Co.*, 283 U.S. 494, 500 (1931). Other cases to

the same effect include *Matter of Rhone-Poulenc Rorer*

*Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995), cert. denied

516 U.S. 867 (1995); and *Equal Employment Opportunity*

*Commission* v. *McDonnell Douglas Corp.*, 960 F.Supp. 203,

204 (E.D.Mo. 1996). Bifurcation is barred by the

Seventh Amendment if there are overlapping issues so

that there is the possibility that different deter-

minations of the same fact may be made by different

juries. How this principle bars bifurcation here will

be discussed below.

There are also other strong reasons why bifurca-

tion is allowed only in exceptional cases. One is the

effect that bifurcation may have on the jury. If there

is to be only one jury, telling it that there will be a

second phase if it reaches a particular decision in the

first phase (i.e., that defendants are liable) may well

prejudice one party by tilting the jury against making

that particular decision. See, e.g., *Hamm* v. *American*

*Home Products Corp.*, 888 F.Supp. 1037, 1039 (E.D.Cal.

1995). If there are to be two juries--which is likely

whenever, as Defendants' seek, there is a delay between

the first and second trials[1], the duplication of effort
by the parties and court personnel is substantial; the
task of empaneling a jury must be performed twice;
there will be two separate opening and closing
statements; some witnesses may have to be called twice,
necessitating two direct and two cross-examinations of
each such witness.  There may also be substantial
additional burdens if discovery is split.  That is
especially true in this lawsuit.  Most if not all of
the Defendants now reside outside the D.C. area, so
depositions will require travel by either the deponents
or counsel; splitting discovery doubles the need for
such travel.  The same is also true of each of Defen-
dants' parents, who are likely to have some knowledge
of facts pertinent to liability as well as damages.  It
also seems likely that there may be a need to take
depositions of other persons who live outside the D.C.
area, and in some instances these potential deponents
may have information that bears on both liability and
damages, so the bifurcation Defendants seek would
require that such persons submit to questioning twice.

---

[1] Defendants' Motion contemplates two juries--if
Plaintiff wins on liability, the parties would have to
conduct discovery and other pre-trial work on damages
and then try damages before damages are tried.  Dis-
covery and other pre-trial efforts would consume many
months at least, so it would be impracticable to use
the same jury that tried liability.

5

The party moving for bifurcation bears the burden of proving the need for the splitting. E.g., *AKE* v. *General Motors Corp.*, 942 F.Supp. 869, 877 (W.D. N.Y. 1996); *Home Elevators, Inc.* v. *Millar Elevator Service Company et al.*, 933 F.Supp. 1090, 1091 (N.D.Ga. 1996) (saying that movant failed to show that the damages issue in this particular case would be especially complex).

Also, because bifurcation is to be allowed only in exceptional situations, courts have made clear that no weight will be given to general arguments that could apply equally to many cases. *Brown* v. *Advantage Engineering, Inc.*, 732 S.Supp. 1163, 1171 (N.D. Ga. 1990); *Marshall* v. *Overhead Door Corp.*, 131 F.R.D. 94, 98 (E.D. Pa. 1990).

All of the foregoing principles militate against granting Defendants' Motion.

*The General Rules about Bifurcation Completely Undercut Defendants' Motion.* Not only has Plaintiff failed to show any basis for bifurcation, but the circumstances of the case make clear that bifurcation not only lacks any colorable justification but also would infringe Plaintiff's Seventh Amendment rights.

6

***Punitive Damages.*** Defendants first conjecture that
discovery into the "financial affairs" of Defendants.
and the use of that information during the liability
phase, might harm Defendants in the eyes of the jury.
Defendants also say that such discovery would be
unnecessary unless the defendants are first found
liable.   (Defs.' Memorandum, pp. 2-3)

Defendants do not dispute that, under the applic-
able law, the financial condition of a defendant is
admissible evidence regarding the exemplary damages
that may be assessed.  Exemplary damages are sought in
this case. (Complaint, ¶¶ 54-56)   In almost every
lawsuit in which a party's financial condition is an
issue, that party will consider that subject highly
sensitive and will strongly prefer to defer discovery
and the presentation of evidence on the subject.   If
this justified splitting the damages and liability
issues, such bifurcation would be ***de rigueur*** in every
case in which evidence of a party's financial condition
was admissible.   That would include virtually every
case in which exemplary damages are sought in any
jurisdiction, including D.C., where such evidence is
considered pertinent to the fixing of exemplary
damages.  As indicated above, factors that apply
broadly to a class of cases are given no weight in a
decision whether to bifurcate a particular case.   It is

hardly surprising that Defendants have not cited any
case allowing bifurcation on the ground that a party's
financial condition is sensitive to the party or might
prejudice the party if admitted during a trial on
liability. The Court in the *Hamm* case cited on page 3
above, refused to bifurcate the issue of defendants'
wealth from the rest of the case.

To the extent to which discovery into financial
condition touches on matters sensitive to a party,
there are readily available safeguards, without
resorting to bifurcation. namely, a protective order
and instructions to the jury. Defendants have offered
no reason whatever to conclude that these measures
would not be adequate in this case.[2]

Defendants next argue that Plaintiff's case for
punitive damages will require proof of "evil motive,
actual malice, or deliberate violence or oppression,"
and that such evidence, if put before a jury in a trial
that includes liability, "is likely to affect the
jury's determination on substantive liability."
Again, if this justified bifurcation, there would be

---

[2] Defendants note that Plaintiff informed a non-
party in other litigation about information developed
during discovery that pertained directly to a non-
party. Defendants fail to note, however, that, absent
a protective order, information obtained in discovery
may be disclosed. Defendants did not even seek, must
less obtain, such an order in the circumstances cited.

8

bifurcation of virtually every case where exemplary
damages are sought. As discussed above, the courts
have regularly declined to order bifurcation on the
basis of such vague, generally applicable allegations.
Even if Defendants could provide specific grounds for
the effect they conjecture the evidence on Defendants'
motives might have on a jury, there are other ways of
protecting Defendants against the prejudice they
conjecture might occur. In the words of one Court,
Defendants "have not shown that with appropriate
instructions, a jury would be unable to fairly judge"
the case when tried in a single phase. *Hargraves* v.
*Capital City Mortgage Corp.* 140 F.Supp.2d 7, 29 (D.D.C.
2000). Similarly, another court stated that it was
confident that jurors could "distinguish between
evidence pertaining to liability or culpability and
evidence bearing on the measure of damages." That
Court said that jury instructions could cure any
prejudice that might be caused if evidence of wealth
were put before the jury that was considering liabil-
ity. *Hamm, supra,* 888 F.Supp. at 1039.

    In any event, Plaintiff's right to a jury trial
requires that exemplary damages be decided by the same

jury that decides liability[3].  There are at least two
major aspects of exemplary damages that are also highly
pertinent to Defendant's liability.

One such aspect relates to the standard applicable
in the District of Columbia to whether a non-media
defendant is liable for defamatory statements.  Plain-
tiff is entitled to, and will, maintain that (in addi-
tion to any other applicable standard that Plaintiff
meets), Defendants are liable because their defamatory
statements were made the result of malice by Defendants
against Plaintiff.  Most if not all of the acts and
omissions of Defendants that Plaintiff expects to prove
as establishing such malice[4] for purposes of "liabil-
ity" are the same ones that Plaintiff would adduce as
evidence supporting the malice bearing on the exemplary
damages to which Plaintiff is entitled.  There is,
thus, material overlap between the exemplary damages
and the liability phases of this lawsuit.  Such overlap
precludes bifurcation, because of the possibility that
different juries may reach different conclusion on a

---

[3]  As indicated above, Defendants must contemplate
at least two juries, since Defendants' want to stay
discovery until after liability is determined.  The
need to conduct discovery and otherwise prepare for a
new trial would make impossible, as a practical matter,
using the exact same jury for the damages phase.

[4]  Such acts and omissions include those summarized
in the Complaint, ¶¶ 13-37.

fact relevant to the outcome. (See discussion of Seventh Amendment rights at pp. 2-3 above.)

There is a second aspect of this litigation in which "malice" is a matter common to both liability and exemplary damages. Defendants's Answer portends a claim that Defendants' defamatory statements were conditionally privileged (Answer, ¶40). One way of defeating such a putative privilege (even if it otherwise applied) is to show that Defendants made the defamatory statements in bad faith. E.g., *Caudle* v. *Thomason*, 942 F.Supp. 635, 640 (D.D.C. 1996). Even if commentators, litigants, or judges may make arguments about whether "bad faith" in this sense is exactly the same as the phrase used by Defendants, viz., "evil motive, actual malice, or deliberate violence or oppression", still, as a practical matter, much the same evidence on the same facts will be presented to jurors on both liability and exemplary damages, and jury determinations will have to be made on those facts.

Thus, there is a large and unavoidable overlap between the liability and exemplary damages determinations the jurors must make in this case. To prevent different juries from making different determinations--thereby infringing Plaintiff's Seventh

Amendment rights--liability and exemplary damages must be decided by the same jury.  This bars bifurcation.[5]

Even if two trials could be held before the same jury, economy of judicial and litigant time and effort weigh heavily in favor of having such issues decided in a single trial, for the reasons canvassed above (see, e.g., pp. 4-5)

*Compensatory Damages.*  Defendants claim that the issues related to compensatory damages in this case are complex, while the liability issues are simple, and that this supposed difference warrants bifurcation. (Defs.' Memorandum, p. 5) This argument is completely without merit.

A short and easy answer to Defendants' contention about bifurcating liability and compensatory damages relates to the overlap between liability and exemplary damages discussed above.  A prerequisite to award of exemplary damages is determination of an award for compensatory damages (even if only a nominal one, such as $1).  *Ayala* v. *Washington*, 679 A.2d 1057, 1070 (D.C. App. 1996), and authorities cited there.  It makes no sense to have a trial of compensatory damages before liability is established, and Defendants do not seek

---

[5] FRCivP 42(b) itself explicitly provides that bifurcation decisions are to be made in a way that saves "inviolate the right of trial by jury ...."

12

such a result.  Thus, compensatory damages must be
tried together with liability, and, as shown above,
liability must be tried together with exemplary
damages.  In short, there must be a single trial in
this litigation.

While this Court need not reach it, Defendants'
claim that the liability issue here is simple may
easily be shown to be wrong.  The liability issue goes
well beyond what Defendants suggest in their Motion.
For instance, as shown at page 10 above, Defendants'
apparent defense of conditional privilege brings into
the liability determination a large bundle of facts
that bear on Defendants' <u>malice</u> in publishing and
failing to retract their defamatory statements.  Fur-
ther, Defendants' Answer claims eleven "additional
defenses[6]."  Defendants have not yet provided responses
to Plaintiff's interrogatories seeking to learn the
facts that Defendants believe underlie those eleven
affirmative defenses.  It seems virtually certain,
however, that those defenses will overlap "liability"
in material ways.  In any event, Defendants cannot have
it assumed at this early stage in the litigation that

---

[6] Answer, ¶¶ 36-47.  The Answer also seeks to
"reserve the right to assert other defenses as
discovery proceeds."  *Id.,* ¶48.

their affirmative defenses will not greatly add to the putative simplicity of "liability."

Accordingly, it is clear that the liability portion of the case will be far from the simple one that Defendants allege in their Motion.

*Judicial Economy*. Defendants claim that "judicial economy" demands that discovery and damages be tried only after a determination that Defendants are liable, "because of the substantial possibility that all questions relating to damages will be rendered moot."

Defendants' supposition that the case will be disposed of before there is any need to determine damages is no more than almost universal, if chimerical, hope of defendants that the lawsuits against them will go away somehow, some day. Defendants have not cited a single case in which this well-nigh universal longing was taken seriously by any court in deciding whether to bifurcate.

Defendants try to bolster their contentions on this point by alleging that Defendants' defamatory statements were circulated to only two recipients. Defendants offer no support whatever for such conclusory claims of Defendants' Counsel. The Complaint alleges that "with reasonable investigation and discovery (FRCP 11(b)(3)) Plaintiff expects to show that Defendants also published the defamatory statements to

14

other recipients besides the ones admitted by
Defendants, and also that Defendants had reason to
expect that original recipients of the defamatory
statements would republish the statements to yet more
recipients.  (Complaint ¶¶ 30 and 31).  At this stage
of the proceedings, the Court must treat these alle-
gations of the Complaint as true.  E.g., *Caudle v.*
*Thomason, supra,* 942 F.Supp. at page 640.

Moreover, even if the only publications of the
defamatory statements were the ones already admitted to
by Defendants, Plaintiff has been seriously damaged by
such publication, as well as by Defendants' failure  to
take any step to mitigate Plaintiff's damages, a
failure that has continued to this day to Plaintiff's
harm.  Plaintiff submits that there is no reasonable
basis for anyone to think that it is highly likely that
the case will not go to trial on the merits.  Finally,
there is no basis for staying discovery on damages.  As
shown above, liability as well as both compensatory and
exemplary damages should be tried together.  Discovery
and other trial preparation must cover damages as well
as liability.  Staying discovery on damages is likely
to lead to a good deal of extra effort, such as the
need for split depositions of each Defendant, their
parents, and probably other potential witnesses (see
discussion at p. 4 above).  Any legitimate concern that

Defendants have about sensitive financial information may be the basis for Defendants' seeking an appropriate protective order and, at trial, appropriate jury instructions.

### CONCLUSION

Defendants' Motion for bifurcation is without merit.  It offers no support other than generalized conjectures, which could apply equally to numerous cases.   Furthermore, the practicalities, including judicial and litigant economies, as well as Plaintiff's rights under the Seventh Amendment to a jury trial, require, Plaintiff respectfully submits, that the Court reject the Motion to separate "liability" from "damages" and to stay discovery on "damages."

Respectfully submitted.

Alan V. Washburn (#32136)
3427 O St., N.W.
Washington, D.C. 20007
(202) 338 0519
Plaintiff *pro se*

CERTIFICATE OF SERVICE

I certify that on this 8th day of September, 2003, I personally hand-delivered a copy of the foregoing Opposition to Defendants' Motion To Bifurcate to the office of Peter Kadzik, Esq. and Keisha A. Gary, Esq., Dickstein, Shapiro, Morin & Oshinsky, LLP, 2101 L St., N.W., Washington, D.C. 20037, attorneys for Defendants.

Alan V. Washburn (#32136)
3427 O St., N.W.
Washington, D.C. 20007
(202) 338 0519