# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALAN V. WASHBURN, | ) | |
| Plaintiff (pro se), | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-869 (RJL/JMF) |
| | ) | |
| MICHAEL LAVOIE, CHRISTIAN WOOD, | ) | |
| ROBERT BERCIK, and EDMUND | ) | |
| DONNELLY, | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO BIFURCATE

Plaintiff's accumulated litigation against his former student-neighbors, the Defendants to this suit, has been ongoing for sixteen months.[1]  Defendants bring this motion hoping to offset the substantial costs imposed on them in defending these suits. Unless the liability determination is bifurcated from that of compensatory and punitive damages, Defendants will be forced to employ at least one expert and to open their financial records to scrutiny by an angry former neighbor prior to the introduction of any evidence whatsoever by Plaintiff.  Moreover, Defendants will be compelled to fight that former neighbor's accusations of bad faith while simultaneously attempting to demonstrate to a jury the existence of a common-law privilege.  The ultimate result

---

[1]     Plaintiff has filed two other suits alleging private nuisance in the courts of the District of Columbia, *Washburn v. Lavoie*, No. SC 7876-02, and *Washburn v. Lavoie*, Civil Action No. 02-7258, and delayed bringing this suit until only a few days prior to expiration of the applicable statute of limitations.

would be the unnecessary imposition of costs on these Defendants and the potential prejudice of the jury hearing these claims.

Plaintiff's argument to the contrary proves too much.  His account of the legal principles governing bifurcation leaves no room to grant bifurcation in any circumstance, a situation clearly not contemplated by Fed. R. Civ. P. 42 (b) which provides for the bifurcation of issues in an action "in the furtherance of convenience or to avoid prejudice."[2]  In reality, courts often separate the issues of damages and liability to avoid unnecessary burden and prejudice to parties, and indeed do so without requiring near the proof Plaintiff would have this Court require of Defendants.  *See, e.g., Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 110 (4th Cir. 1991); *American Nat'l Red Cross v. Travelers Indemn. Co. of Rhode Island*, 924 F. Supp. 304, 308 (D.D.C. 1996).  Indeed, Fed. R. Civ. P. 42 (b) establishes its own criteria for bifurcation without the need for Plaintiff's gloss on its requirements: bifurcation is appropriate where it avoids prejudice or promotes convenience or judicial economy.  *Organic Chemicals, Inc. v. Carroll Products, Inc.*, 86 F. R. D. 468, 469 (W.D. Mich. 1980).  Here, Defendants have shown that convenience, judicial economy, and the avoidance of prejudice justify bifurcation of

---

[2]     Plaintiff's assertions that there is a "presumption" against bifurcation and the fact of a punitive damages claim is therefore irrelevant are not supported by case law. Pl. Mem. at 2.  The decision in *Kimberly-Clark Corp. v. James River Corp. of Virginia*, for example, states only that bifurcation is not the "usual course."  131 F.R.D. 607, 608 (N.D. Ga. 1989).  Likewise, the language plaintiffs quote from *Marisol A. v. Giuliani* is apparently merely a restatement of the criteria found in Fed. R. Civ. P. 42 (b) itself -- "exceptional circumstances" are merely those circumstances where bifurcation avoids prejudice or promotes judicial economy and convenience.  929 F. Supp. 662, 693 (S.D.N.Y. 1996).  The admonition of the drafters that bifurcation should not be routinely ordered therefore indicates only that a court should engage in *some* level of scrutiny to establish that bifurcation will provide sufficient benefits to justify its application in a particular case.

liability from the determination of compensatory and punitive damages in this case and therefore respectfully request the Court issue an order to that effect.

## ARGUMENT

I.    BIFURCATION OF THE LIABILITY AND PUNITIVE DAMAGES PHASES OF DISCOVERY AND TRIAL IS NECESSARY TO PREVENT PREJUDICE TO DEFENDANTS AND TO PROMOTE JUDICIAL ECONOMY

A.    *Bifurcation of the Liability and Punitive Damages Phases of Discovery and Trial Is Necessary to Prevent Prejudice to Defendants*

It is elementary that the introduction of allegations and proof of "evil motive, actual malice, or deliberate violence or oppression," *BWX Electronics, Inc. v. Control Data Corp.*, 929 F.2d 707, 712 (D.C. Cir. 1991), creates a risk that a jury will be prejudiced against a defendant when it determines the logically precedent question of whether the defendant is liable for the underlying tort. Furthermore, prematurely pursuing the discovery of materials relevant to punitive damages determinations, such as proof of wealth, prejudices a defendant by unduly exposing what is acknowledged to be private materials to examination by a plaintiff.

Plaintiff's claim for punitive damages hinges on proving a two-year long conspiracy by Defendants to deprive him of sleep, mishandle their garbage, and destroy his reputation. Compl. ¶¶ 13-37; Pl. Mem. at 9, n. 4. The prejudice to Defendants that would result from introducing the details of this story, which has already been the subject of two other lawsuits, is manifest. First, Plaintiff's allegations of bad acts including taunting and obscenities by Defendants may lead a jury to believe, without any permissible basis, that Defendants also acted impermissibly in making the statement on which this suit is based. *See, e.g.*, Compl. ¶¶ 17, 20. Indeed, here the risk of prejudice is heightened by the incongruity between the background allegations that

support Plaintiff's claim for punitive damages and the *single* act that gives rise to his claim for defamation -- the issue of liability could easily be lost in the broad tale Plaintiff desires to present to the jury.

Additionally, to accomplish the goals of punitive damages, an award must be based on the financial strength of Defendants.  Restatement (Second) of Torts § 908 cmt. E (1977).  Any wealth possessed by Defendants could enable Plaintiff to induce the jury to find the defendant guilty of malice, thus entitling Plaintiff to punitive damages. *Tillery v. Lynn*, 607 F. Supp. 399, 403 (S.D.N.Y. 1985).

Finally, allowing discovery on financial issues prior to a determination of liability will substantially and unnecessarily interfere with Defendants' privacy rights by exposing private financial material to examination by their former neighbor.[3]

> B.   *Bifurcation of the Liability and Punitive Damages Phases of Discovery and Trial Is Necessary to Promote Judicial Economy*

Judicial economy would also be hindered should the issues of liability and punitive damages be tried together.  *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993) ("bifurcation. . . provide[s a] powerful legal tool[ ] which, by

---

[3]   This concern motivates the policy of many states which require at least a *prima facie* showing of liability before discovery regarding wealth matters may be pursued. *See, e.g.*, Paul V. Niemeyer, Linda M. Schuett, John A. Lynch, Jr., and Richard W. Bourne, *Maryland Rules Commentary*, at 276 (3d ed. 2003) ("In order to identify those cases in which an award of punitive damages is remote or in which punitive damages are not fairly claimable, and therefore represent an improper intrusion into net worth, the courts have traditionally controlled the timing of the discovery of net worth and required its production only after demonstration by the plaintiff of net worth and required its production only after demonstration by the plaintiff of a *prima facie* case for punitive damages. . . .  Until that showing, whether before or at trial, a defendant may properly refuse production of net worth data requested on the basis of a punitive damage claim.").  Here, Plaintiff has made no showing that his claim is likely to survive even a motion for summary judgment.

effectively isolating the issues to be resolved, avoid[s] lengthy and perhaps needless litigation."). The evidence required to evaluate Plaintiff's claim for punitive damages, that relating to a two year-long interaction between the parties, will far exceed in volume and complexity the evidence required to evaluate Plaintiff's claim of defamation, which arises from a single statement that was transmitted to only two individuals. A determination on liability will require only a consideration of whether the statement is defamatory, whether the Defendants possessed the requisite state of mind, and whether any defenses including common law privileges apply, whereas the determination on punitive damages, barring some decision by the Court narrowing the scope of Plaintiff's arguments, will require the evaluation of allegations themselves voluminous enough to give rise to two collateral suits. Plaintiff's assertions to the contrary are simply incorrect.

       Plaintiff does not directly address this argument, stating instead that concerns such as these are present whenever punitive damages claims are present[4] and should be

---

[4]    Plaintiff appears to argue in his Memorandum that the policy against the bifurcation of cases in the ordinary course of a court's business requires a court to analyze whether a particular cause of action, regardless of its complexity or elements, be compared to other cases involving the same causes of actions to determine whether it is atypical. Pl. Mem. at 5. Plaintiff is incorrect. Indeed, the comparison required is between the case at hand and an ordinary tort claim for compensatory damages. *Cf. Equal Employment Opportunity Comm'n v. McDonnell Douglas Corp.*, 960 F. Supp. 203, 204 (E.D. Mo. 1996) (stating that an entire class of actions is appropriately bifurcated based solely on its broad characteristics). Plaintiff's reliance on *Brown v. Advantage Engineering, Inc.*, 732 F. Supp. 1163 (N.D. Ga. 1990), and *Marshall v. Overhead Door Corp.*, 131 F.R.D. 94 (E.D. Pa. 1990), is likewise misplaced. Simply put, neither case stands for the proposition that concerns inherent in a particular type of claim must be disregarded. Here, Plaintiff's inclusion of a claim for punitive damages renders this case ripe for bifurcation. Plaintiff's desire to include in this action an in-depth examination of collateral matters currently before other courts further bolsters this reality.

1665356 v1; Z_ZW01!.DOC

disregarded.  Pl. Mem. at 6-7.  Plaintiff also argues that jury instructions and a

protective order would be sufficient to allay these concerns.  Pl. Mem. at 8.  As

discussed *supra*, Plaintiff's understanding of the standard to be applied to a motion for

bifurcation is flawed.  This Court has the discretion to order bifurcation not only in

exceptional cases, but wherever judicial economy or the avoidance of prejudice merits

it.  Fed. R. Civ. P. 42 (b).  Here, bifurcation is appropriate because the promise of jury

instructions and a protective order does not fully address Defendants' concerns.[5]

II.  BIFURCATION OF THE LIABILITY AND COMPENSATORY DAMAGES
     PHASES OF DISCOVERY AND TRIAL IS NECESSARY TO PREVENT
     PREJUDICE TO DEFENDANTS AND TO PROMOTE JUDICIAL ECONOMY

     A.  *Bifurcation of the Liability and Compensatory Damages Phases of Discovery*
         *and Trial Is Necessary to Prevent Prejudice to Defendants*

         Defendants will also be prejudiced by the simultaneous discovery and trial of

liability and compensatory damages issues.  Despite his assertions to the contrary,

_____

[5]     Although it is difficult at this stage to predict the effect of jury instructions --
another indication that Plaintiff erects too strict a standard -- it is likely that the
presentation of the long and sordid tale of Plaintiff's relations with his former neighbors
will interfere with the clear presentation of what is an exceedingly simple issue.
Moreover, jury instructions are not themselves the preferable manner of addressing the
prejudice, since they are far less certain to prevent prejudice than bifurcation.  *See*
*Monaghan v. SZS 33 Assoc., L.P.*, 827 F. Supp. 233, 244 (S.D.N.Y. 1993) ("where one or
more parties may be subjected to undue prejudice if claims were tried to the same jury,
bifurcation is the preferred solution").

Likewise, a protective order does not address any but one of the potential sources of
prejudice -- revelation of private materials to non-parties.  Although Plaintiff has in the
past proven willing to share discovery material with non-parties acquainted with
Defendants, Defendants are more concerned that they will be compelled, unnecessarily,
to reveal private financial information to the neighbor who has harassed them in the
past, Plaintiff.  Such a concern has been the basis for bifurcation and a stay of discovery
into financial matters in past cases.  *Supra*, 4, n. 3.

Plaintiff's claim for compensatory damages is far more complex than his claim for liability.  *See Witherbee v. Honeywell, Inc.*, 151 F.R.D. 27, 29 (N.D.N.Y. 1993).  Plaintiff has asserted both that the publication of the statement in question to two individuals who have little day-to-day interaction with him, and which was immediately followed by a refutation by him, gives rise to $1,500,000 in compensatory damages.[6]  Compl. ¶¶ 27, 33-35; Pl. Mem. at 14.  How Plaintiff will demonstrate such extraordinary damages is unknown to Defendants but will certainly require the introduction of some evidence, either in the form of expert testimony or some other method of calculation, to support his assertion.  Conversely, the liability is less likely to require the retention of an expert of complex methods of calculation.  To require Defendants to engage in discovery designed to rebut such apparently baseless claims for damages *prior* to a determination of liability would severely prejudice Defendants since they will have to bear the cost of addressing an issue that is unlikely ever to arise.[7]  *Nichols*, 902 F. Supp. at 36.

Plaintiff argues that the fact that an award of compensatory damages is legally precedent to an award of punitive damages requires that liability and compensatory damages be tried together.  Pl. Mem. at 12.  This argument is without merit.  Both compensatory and punitive damages could be tried together with the

---

[6]     Plaintiff challenges Defendants' representation that only two individuals besides Plaintiff have seen this letter.  Plaintiff's strenuous insistence that more than two individuals reviewed the letter is baffling since he has never engaged in any investigation to support his allegations.  Defendants base their statement on preliminary investigation that revealed that neither Nancy Itteilag nor Julie Fultz republished the statement.

[7]     It bears noting that the financial burden placed on Defendants by Plaintiff dates back to May 2002 when Plaintiff first filed a claim against them, and now continues in two different fora.

former determination a prerequisite to a jury finding regarding the latter, just as it would be in a unitary trial.

      B.    *Bifurcation of the Liability and Compensatory Damages Phases of Discovery and Trial Is Necessary to Promote Judicial Economy*

      Finally, Plaintiff claims that judicial economy will not be promoted by bifurcation. Pl. Mem. at 13-15. Plaintiff once again misconstrues the standard for determining whether bifurcation is appropriate on these grounds, however. Defendants need not bring a summary judgment-style motion in order to demonstrate the benefits of avoiding discovery and trial of logically subsequent phases of the trial. *See Alcan Aluminum Corp.*, 990 F.2d at 719. Rather, Defendants need only show that the issues are separable and that the potential for wasted expense associated with the logically subsequent issues is substantial. Defendants have met this burden. Discovery and trial of compensatory and punitive damages will require the explanation of how a single statement received by two individuals could cause $1,500,000 worth of damages, the exploration of two years of events, and perhaps even the retention of experts. Because Plaintiff and Defendants are not in disagreement about most of the *facts* surrounding the liability phase of the trial, on the other hand, that phase will require only an exploration of the *legal* implications of those facts, a far simpler exercise.[8]

---

[8]    Plaintiffs and Defendants agree, for example, that Plaintiff taped noises emanating from Defendants' home, that Defendants composed a letter containing a statement that is the subject of this litigation, that the letter was in response to prior letters by Plaintiff, that the prior letters by Plaintiff memorialized a legal conflict between the parties, and that the letter was initially received by only two individuals (as well as Plaintiff). Defendants expect that, following discovery, Plaintiff will also agree that only two individuals ever received the statement. The liability determination will therefore involve little more than an argument about the legal implications of these facts.

### III.   THE SEVENTH AMENDMENT DOES NOT BAR THE BIFURCATION OF LIABILITY FROM COMPENSATORY AND PUNITIVE DAMAGES

Following the determination of a question by an initial jury, the Reexamination Clause of the Seventh Amendment bars only the retrial of that *same question* by a second jury, not the presentation of overlapping evidence with regard to a distinct questions. *Taylor v. D.C. Water & Sewer Auth.*, 205 F.R.D. 43, 51 (D.D.C. 2002) (citing *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 497-98 (1931)); *Equal Employment Opportunity Comm'n v. McDonnell Douglas Corp.*, 960 F. Supp. 203, 205 (E.D. Mo. 1996) ("Although some of the evidence may overlap, the issues to be decided at the separate trials are wholly distinct. . . .  Therefore, the Court concludes that bifurcation is appropriate and permissible under the Seventh Amendment.").  Even then, only where the factual issues are "'so interwoven. . . that the [one] cannot be submitted to the jury independently of the [other] without confusion and uncertainty which would amount to a denial of a fair trial'" must a court order a unitary trial.  *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 693 (9th Cir. 1977) (quoting *United Air Lines, Inc. v. Wiener*, 286 F.2d 302 (9th Cir. 1961)).  Plaintiff's argument that *evidentiary* overlap between the malice element of his defamation claim, the malice element of his defense to any claim of qualified privilege, and the malice element of his claim for punitive damages is therefore misplaced.[9]  Pl. Mem. at 9.

For the Seventh Amendment to bar bifurcation in this case, the commentators and courts whose views Plaintiff dismisses offhand, Pl. Mem. at 10, would have to hold

---

[9]   It should be pointed out, initially, that the "malice" determinations for the element of the defamation claim and the element of the common law privilege defense will be tried at the same time, before the same jury, even if the Court grants Defendants' motion to bifurcate.

that "malice" as used in each of these sense is an identical legal issue.[10]  Plaintiff does not claim that this is the case, nor would the case law support him if he did.  *Novecon Ltd. v. Bulgarian-American Enterprise Fund*, 190 F.3d 556, 567 (holding that malice necessary to overcome privilege is greater than malice needed to prove defamation); *Columbia First Bank v. Ferguson*, 665 A.2d 650, 657-658 (D.C. 1995) (malice necessary for the recovery of punitive damages greater than that required to overcome a qualified privilege).  Indeed, it is virtually black-letter law that merely proving malice for purposes of defamation is not sufficient to demonstrate malice for purposes of punitive damages.  Bifurcation of this action into two phases, one addressing liability (and common law privileges) and the other addressing compensatory and punitive damages would therefore require no reexamination of any legal question by a second jury, and therefore presents no Seventh Amendment problem.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court issue an order bifurcating determinations of compensatory and punitive damages from a determination of liability in this action.  Pursuant to that order, Defendants further respectfully request that all discovery related to damages be stayed pending a determination of liability.

---

[10]     Indeed, differences between the concepts of "malice" are likely to lead to *more* confusion if litigated by a single jury in a unitary trial, no matter how expertly worded the jury instructions may be.

Dated:  September 17, 2003                    Respectfully submitted,


By  *Keisha A. Gary*

Peter J. Kadzik  (#964007)
Keisha A. Gary  (#455354)
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
2101 L Street, N.W.
Washington, D.C.  20037-1526
(202) 785-9700

Attorneys for Defendants Michael
Lavoie, Christian Wood, Robert Bercik,
and Edmund Donnelly

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2003, a copy of the foregoing Answer

was delivered via first class mail to the following:

Alan V. Washburn
3427 O Street, N.W.
Washington, D.C. 20007
(202) 457-1600

John F. Walson